**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

|  |  |  |
|---|---|---|
| | § | |
| | § | |
| In Re: | § | |
| MERSCORP INC., ET AL., REAL | § | MDL Docket No. 1810 |
| ESTATE SETTLEMENT PROCEDURES | § | |
| ACT (RESPA) LITIGATION | § | ALL CASES |
| | § | |
| | § | |

**<u>ORDER NO. 21</u>**

On this day came on to be considered Defendants' 12(b)(6) Motion to Dismiss, (D.E. 252, ¶ IV(A)(1)), and Plaintiffs' Motion for Class Certification, (D.E. 240-241).  For the reasons discussed below, Defendants' motion is hereby GRANTED, and Plaintiff's motion is hereby DENIED as MOOT.

**I.      Jurisdiction.**

The Court has federal question jurisdiction over this case pursuant to 28 U.S.C. § 1331 because Plaintiffs bring suit pursuant to the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, *et seq*.

**II.      Procedural History.**

Between January and May 2007, the Judicial Panel on Multidistrict Litigation ("MDL Panel") transferred thirty (30) cases to this Court, finding that "these … actions involve common questions of fact, and that centralization under [28 U.S.C. § 1407] in the Southern District of Texas will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation."  (D.E. 1 at 1; <u>see also</u> D.E. 10, 16, 24, 29, 38, 143.)[1]  All thirty cases

---

[1]      "D.E. __" refers to docket entries in the multidistrict litigation, 2:07-md-1810.  "D.E. (__) __" refers to docket entries in the member case whose case number appears in the parenthetical; for example, "D.E. (29) __" refers to docket entries in <u>Knighton v. Merscorp</u>, 2:07-cv-0029.

involved, generally, purported state-wide class actions against Defendants, Merscorp Inc., Mortgage Electronic Registration Systems, Inc., and MERS, Inc., (collectively "MERS"), alleging violations of RESPA sections 8(a) and (b), and the Racketeer Influenced and Corrupt Organizations Act ("RICO").  Two cases, Senier v. Merscorp Inc., et al., 2:07-cv-0165, and Allen, et al. v. Merscorp, Inc., et al., 2:07-cv-0097, also alleged state law claims under New Hampshire and Indiana state law, respectively.  (D.E. (165) 6 at 11; D.E. (97) 34 at 14.)

Through subsequent actions, Plaintiffs' RICO and state law claims were dismissed from the multidistrict litigation ("MDL").  Specifically, on March 26, 2007, Plaintiffs filed a "Notice of Class Certification Intentions With Regard to RICO," voluntarily dismissing their RICO claims.  (D.E. 25.)  The Court approved this dismissal on March 28, 2007.  (D.E. 28.)  Then, on June 22, 2007, the Court severed the two state law claims and sent them to the MDL Panel with a recommendation that they be remanded to the federal district courts where they originated.  (D.E. 155, ¶ 1.)  The MDL Panel remanded the claims on August 17, 2007.  (D.E. 177.)

The Court further limited the MDL through the application of RESPA's one-year statute of limitations period.  RESPA provides a strict, one-year statute of limitations for violations of RESPA sections 8(a) and (b), i.e., 12 U.S.C. §§ 2607(a) and (b).  See 12 U.S.C. § 2614 ("Any action pursuant to the provisions of section … 2607 … of this title may be brought … within … 1 year … from the date of the occurrence of the violation.").  When a purported class action is commenced, the statute of limitations is tolled "as to all asserted members of the class."  Am. Pipe & Constr. Co. v. Utah, 414 U.S. 538, 554 (1974); see also Crown, Cork & Seal Co., Inc. v. Parker, 462 U.S. 345, 350-51 (1983); Neely v. City of Grenada, 799 F.2d 203, 213 (5th Cir. 1986).  Because the first class action alleging violations of RESPA section 8 by MERS was filed on June 5, 2006, in Knighton, et al. v. Merscorp Inc., et al., 2:07-cv-0029, the Court limited the

purported class to persons who closed on their mortgages on or after June 5, 2005.  (D.E. 155, ¶ 2.)  In accordance with this limitation, the Court *sua sponte* dismissed thirteen (13) member cases in which the Plaintiff had closed his or her mortgage before June 5, 2005.  (Id., ¶ 3.)

In addition, eleven (11) Plaintiffs voluntarily dismissed their cases against MERS, leaving six cases pending in the MDL.  (D.E. (25) 54-55; D.E. (27) 32, 34; D.E. (30) 34-35; D.E. (84) 30-31; D.E. (85) 46-47; D.E. (88) 54-55; D.E. (89) 47-48; D.E. (97) 44-45, 68-69; D.E. (142) 21, 23, 60-61; D.E. (150) 41-42; D.E. (151) 15.)  These six cases are:

    (1)    Knighton v. Merscorp Inc., 2:07-cv-0029[2];

    (2)    Calalang v. Merscorp Inc., 2:07-cv-0079;

    (3)    Higgins v. Merscorp Inc., 2:07-cv-0143;

    (4)    Shaw v. Merscorp Inc., 2:07-cv-0164;

    (5)    Burrage v. Merscorp Inc., 2:07-cv-0267; and

    (6)    Arledge v. Merscorp Inc., 2:07-cv-0269.

Five of these six cases maintain their original state-wide class action claims, alleging violations of RESPA sections 8(a) and 8(b) by MERS.  In Knighton, however, Plaintiffs amended their complaint to allege a nationwide class, consisting of "all individuals who closed their mortgages on or after June 5, 2005 until the present, and were the mortgagors in any federally related mortgage loan settlement transaction in which MERS is listed as the mortgagee in the public land records."  (D.E. 19, ¶ 27; D.E. 148, ¶ 27; D.E. 184, ¶ 27.)

On January 21, 2008, Plaintiffs in Knighton, Burrage, and Arledge, filed a Motion for Class Certification, seeking to certify the nationwide class alleged in Knighton.  (D.E. 240-241.)

---

[2]    Plaintiff Rochelle Knighton is not a proper MDL Plaintiff because she closed on her mortgage on April 22, 2005, before the June 5, 2005 cut-off date.  (D.E. (29) 77, ¶ 17.)  Her co-Plaintiff, Billie Jean Norman, however, closed on October 12, 2006, within the statute of limitations period.  (Id., ¶ 22.)

On March 7, 2008, Defendants filed their Response in Opposition to Plaintiffs' motion.  (D.E. 252.)  In their response, Defendants argued, among other things, that class certification was not appropriate because Plaintiffs have not stated legally valid claims.  (Id., ¶ IV(A)(1).)

On March 10, 2008, the Court entered an order giving Plaintiffs notice that "the Court will treat section IV(A)(1) of Defendants' response as a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss for failure to state a claim."  (D.E. 254.)  The Court informed Plaintiffs that they could file with their Reply in Support of Class Certification, due April 1, 2007, an Opposition to Defendants' Motion to Dismiss.  (Id.)  The following day, the Court clarified that it would treat section IV(A)(1) of Defendants' Response as "a Rule 12(b)(6) motion to dismiss in all pending MDL-1810 member cases," not merely Knighton, Burrage, and Arledge.  (D.E. 255 (emphasis in original).)  The Court stated that "all … [P]laintiffs who wish to respond to Defendants' motion to dismiss must file their responses by April 1, 2008."  (Id.)

On March 18, 2008, Plaintiffs in Knighton, Burrage, and Arledge filed an Unopposed Motion for Enlargement of Time to Reply to Defendants' Response to Plaintiffs' Motion for Class Certification, seeking to extend the reply deadline to April 15, 2008.  (D.E. 257.)  That same day, the Court granted Plaintiffs' motion, and clarified that "this extension of time applies to all MDL-1810 member cases."  (D.E. 258 (emphasis in original).)  On April 15, 2008, Plaintiffs in Knighton, Burrage and Arlidge filed their response.  (D.E. 264.)  In addition, Plaintiffs in Higgins and Shaw filed motions adopting "the arguments and memorandum in response filed by liaison counsel in the case of Knighton …"  (D.E. 268-269.)  Plaintiffs in Calalang did not respond.

On April 17, 2008, Defendants filed a Motion for Leave to File a Reply to Plaintiffs' Opposition to Defendants' Motion to Dismiss.  (D.E. 274.)  Defendants argued that "Plaintiffs'

response to the Motion to Dismiss makes some inaccurate statements and mischaracterizations of both the law and the facts which merit rebuttal." (Id., ¶ 5.)  The Court granted Plaintiffs' motion on April 18, 2008.  (D.E. 275.)  On May 1, 2008, Defendants filed their reply.  (D.E. 286.)

## III.   Factual Background.

### A.   The Residential Mortgage Market.

A mortgage note is generally a negotiable instrument under Article 3 of the Uniform Commercial Code ("UCC").[3]  As such, it can be bought and sold.[4]  Indeed, mortgage lenders in the United States often sell mortgage loans to generate funds for future lending.[5]   As one commentator noted:

> The negotiability of notes under the UCC is the foundation for the secondary market for mortgage loans.  As a result, the U.S. housing market is the envy of the entire world.   Home ownership in most other countries is far less attainable, largely because financing is not readily available.   The ability of lenders to replenish their capital by selling loans in the secondary market is what makes money accessible for home ownership.[6]

Two aspects of a mortgage loan can be sold—servicing and beneficial rights.[7]  Servicing rights include the right to collect monthly escrow, principal, and interest payments from the borrower, and beneficial rights include the right to receive full repayment of the loan.[8]  As one commentator explained, using an example:

> *Lender A* originates the loan and, before the first loan payment is collected, sells *Mortgage Bank S* the loan's servicing and beneficial rights.  *Mortgage Bank S*

---

[3]        R. K. Arnold, Yes, There Is Life On MERS, 11 Probate & Property 32, 34 (1997).

[4]        Id.

[5]        Id.; Katie Oppy, The MERS Reality: The Electronic Tracking of Mortgage Rights in the United States, Housing Finance International, June 2001, at 41.

[6]        Arnold, supra note 3, at 34.

[7]        Oppy, supra note 5, at 41.

[8]        Id.

decides to retain servicing rights, but sells the beneficial rights to *Investor F*.  As the servicer, *Mortgage Bank S* collects the monthly mortgage payment and keeps a percentage of the payment as a fee for servicing the loan.  *Mortgage Bank S* sends the balance of the loan payment to *Investor F*, which holds the mortgage's beneficial rights.[9]

The mortgage and mortgagee must be recorded in the county land records.[10]  This provides public notice that there exists a lien on the property, and protects against fraudulent sales of the loan and/or the property.[11]  While the owner of the beneficial rights is the true owner of the mortgage, oftentimes the servicer is designated as the mortgagee and, thus, made responsible for recording the mortgage.[12]  When the servicing rights are sold, the county land records must be updated to reflect the new servicer/mortgagee.[13]

In the early 1990s, trading and selling servicing rights became a large business.[14]  Each time a mortgage was transferred to a new servicing company, a new assignment had to be recorded in the county land records.[15]  This created a tremendous amount of paperwork for the county recorders, which resulted in a myriad of problems.[16]  As one commentator explained:

> [T]he sheer volume of transfers between servicing companies and the resulting need to record assignments caused a heavy drag on the secondary market.  The burden affected lenders, title companies, consumers and even local recorders.  Assignment processing for the sale of a relatively modest loan portfolio c[ould]

---

[9]     Id.

[10]    Id. at 41-42.

[11]    Id.

[12]    Arnold, supra note 3, at 34; see also Alan Steven Wolf, What to do when the Chain Breaks, Servicing Management, February 1997 ("Fannie [Mae], Freddie [Mac] and nearly all major conduit servicing guidelines place responsibility for the proper assignment of mortgages on the servicer.")

[13]    Id.

[14]    Oppy, supra note 5, at 42.

[15]    Id.; see also Arnold, supra note 3, at 34.

[16]    Id.

take up to six months to complete.  Error rates as high as 33% [we]re common. With the active secondary market in servicing contracts, more than four million loans [we]re affected annually.  Loan servicing c[ould] trade several times before even the first assignment in a chain [wa]s recorded, leaving the public records clogged with unnecessary assignments.  Sometimes these assignments [we]re recorded in the wrong sequence, clouding title to the property.[17]

**B.    MERS.**

MERS was developed to remedy these problems.  In 1993, Fannie Mae, Ginnie Mae, and Freddie Mac published a white paper analyzing the need for an electronic database to track the beneficial and servicing rights associated with mortgages.[18]  Through a collaborative effort between these government-sponsored mortgage entities and the Mortgage Bankers Association of America this idea was further explored and developed.[19]  In April 1997, MERS was officially launched.[20]

The MERS system operates in the following way:

When a borrower enters into a mortgage agreement, the borrower signs a contract naming MERS as the mortgagee of record.  (D.E. 241 at 7; D.E. 252 at 9.)  MERS then records the mortgage in the MERS database, and electronic database that tracks the beneficial and servicing rights to the mortgage.  (D.E. 241 at 7; D.E. 252 at 9-10.)  MERS charges the lender a one-time fee of $4.95 per mortgage[21]  (the "MERS registration fee") for acting as the mortgagee of record and recording the mortgage on the MERS system.  (D.E. 241 at 17 n. 12; D.E. 252 at 10.)

---

[17]    Arnold, supra note 3, at 34.

[18]    Id. at 33.

[19]    Id.; see also Oppy, supra note 5, at 42.

[20]    Arnold, supra note 3, at 33.

[21]    Before 2007, the MERS registration fee was $3.95 per mortgage.  (D.E. 184, ¶ 34.)

MERS records the mortgage and mortgagee (*i.e.*, itself) in the public land records.  (D.E. 241 at 7-8; D.E. 252 at 9.)  Once this has been accomplished, MERS members (*e.g.*, servicers and investors) are free to transfer the servicing and beneficial rights to the loan as many times as they wish without having to record these transfers in the public land records.  (D.E. 241 at 8; D.E. 252 at 9-10.)  Instead, these transfers are memorialized in the MERS database.  (D.E. 241 at 8; D.E. 252 at 9.)  MERS remains listed as the mortgagee of record in the public land records throughout the life of the loan.  (<u>Id</u>.)

**C.    The Real Estate Settlement Procedures Act ("RESPA") – 12 U.S.C. § 2601, *et seq*.**

In 1974, Congress passed the Real Estate Settlement Procedures Act ("RESPA") to regulate the costs consumers pay to settle their real estate transactions. The statute states:

> The Congress finds that significant reforms in the real estate settlement process are needed to insure that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices that have developed in some areas of the country.

12 U.S.C. § 2601(a).

"'One of the abusive practices that Congress sought to eliminate through the enactment of RESPA was the payment of referral fees, kickbacks, and other unearned fees.'"  <u>Busby v. JRHBW Realty, Inc.</u>, 513 F.3d 1314 (11th Cir. 2008) (quoting <u>Sosa v. Chase Manhattan Mortg. Corp.</u>, 348 F.3d 979, 981 (11th Cir. 2003) (citing S. Rep. No. 93-866 (1974), reprinted in 1974 U.S.C.C.A.N. 6546, 6551)).  Congress addressed both kickbacks and unearned fees in Section 8 of RESPA, which provides in relevant part:

> (a) Business referrals. No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person.

(b) Splitting Charges. No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed.

12 U.S.C. § 2607(a)-(b).  Section 8 also includes a safe-harbor provision, which states:

Nothing in this section shall be construed as prohibiting … the payment to any person of a bona fide salary or compensation or other payment for goods or facilities actually furnished or for services actually performed …

12 U.S.C. § 2607(c)(2).

### D.    Plaintiffs' Allegations.

Plaintiffs assert, in their motion for class certification, that the following Plaintiffs adequately represent the entire class: Ms. Knighton, Mr. Cook and Mr. Arledge.  (D.E. 241 at 27.)  Plaintiffs allege the following facts, relevant to these Plaintiffs, in their complaints:

On or about April 22, 2005, Plaintiff Knighton entered into a mortgage loan agreement with Countrywide Home Loans, Inc., d/b/a America's Wholesale Lender.  (D.E. 184, ¶ 17.)  Countrywide Home Loans, a MERS member, registered Ms. Knighton's mortgage with MERS for a $3.95 fee.  (Id., ¶ 19.)  Countrywide Home Loans then passed the $3.95 fee on to Ms. Knighton "by including it within the fess [sic] disclosed on [her] HUD-1 Settlement Statement …"  (Id.)  In their motion for class certification, Plaintiffs assert that the MERS registration fee was included as part of a $49.00 charge on Ms. Knighton's HUD-1 statement described as a "mortgage recording fee."  (D.E. 241 at 28.)  Plaintiffs state that Ms. Knighton will represent, for purposes of the purported class action, "those individuals throughout the nation who were charged the MERS registration fee without having it disclosed on their HUD-1 Settlement Statements."  (Id.)

On or about March 31, 2006, Plaintiff Cook entered into a mortgage agreement with Howard Hanna Mortgage Services.  (D.E. (269) 1, ¶ 22.)  Howard Hanna, a MERS member,

registered Mr. Cook's mortgage with MERS for a $3.95 fee.  (Id., ¶ 24.)  Howard Hanna then passed the $3.95 fee on to Mr. Cook "by including it within the fess [*sic*] disclosed on [his] HUD-1 Settlement Statement …"  (Id.)  In their motion for class certification, Plaintiffs assert that the MERS registration fee was disclosed on line 812 of Mr. Cook's HUD-1 statement.  (D.E. 241 at 29.)  Plaintiffs state that Mr. Cook will represent, for purposes of the purported class action, "those individuals who were charged $3.95 from the beginning of the statutory period through December 31, 2006."  (Id.)

On or about March 1, 2007, Plaintiff Arledge entered into a mortgage agreement with Howard Hanna Mortgage Services.  (D.E. (269) 1, ¶ 17.)  Howard Hanna, a MERS member, registered Mr. Arledge's mortgage with MERS for a $4.95 fee.  (Id., ¶ 19.)  Howard Hanna then passed the $4.95 fee on to Mr. Arledge "by including it within the fess [*sic*] disclosed on [his] HUD-1 Settlement Statement …"  (Id.)  In their motion for class certification, Plaintiffs assert that the MERS registration fee was disclosed on line 812 of Mr. Arledge's HUD-1 statement.  (D.E. 241 at 29.)  Plaintiffs state that Mr. Arledge will represent, for purposes of the purported class action, "those individuals who were charged $4.95 from January 1, 2007 through resolution of this action."  (Id.)

Plaintiffs allege that, in each of these cases, the MERS registration fee constituted an illegal kickback in violation of RESPA section 8(a).  (D.E. 184, ¶¶ 31-38; D.E. (269) 1, ¶¶ 30-37.)  Specifically, they allege that "[t]he MERS member kick[ed] back the MERS registration fee to MERS pursuant to an agreement or understanding that the business of registering all subsequent sales of the note and mortgage should be referred to MERS."  (D.E. 184, ¶ 36; D.E. (269) 1, ¶ 35.)  Plaintiffs also allege that the MERS registration fee constituted an "unearned charge" in violation of RESPA section 8(b).  (D.E. 184, ¶¶ 39-43; D.E. (269) 1, ¶¶ 38-42.)

Specifically, they allege that the MERS registration fee was "charge[d] … to and received from the borrower for services that d[id] not benefit the borrower."  (D.E. 184, ¶ 41; D.E. (269) 1, ¶ 40.)

## IV.   Discussion.

### A.     Motion to Dismiss Standard.

"To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'"  Cuvillier v. Sullivan, 503 F.3d 397, 401 (5th Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007)).  "Conversely, 'when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, "this basic deficiency should … be exposed at the point of minimum expenditure of time and money by the parties and the court."'" Cuvillier, 503 F.3d at 401 (quoting Twombly, 127 S. Ct. at 1966 (quoting 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1216, at 234 (internal citations and quotation marks omitted))).  In deciding a motion to dismiss "[w]e must accept all well-pleaded facts alleged in the complaint as true and must construe the allegations in the light that is most favorable to the plaintiff." Cent. Laborers' Pension Fund v. Integrated Elec. Servs., 497 F.3d 546, 550 (5th Cir. 2007) (citing Plotkin v. IP Axess Inc., 407 F.3d 690, 696 (5th Cir. 2005)).   "Nevertheless, '[w]e do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.'" Id.

### B.     Kickbacks.

RESPA Section 8(a) is an anti-kickback statute that prohibits "giv[ing] and … accept[ing] any fee, kickback, or thing of value pursuant to any agreement or understanding …

that business incident to or a part of a real estate settlement service … shall be referred to any person." 12 U.S.C. § 2607(a).  Plaintiffs argue in their complaint that:

> The MERS member kicks back to MERS the registration fee received from the borrower upon payment of the settlement costs … The MERS member kicks back the MERS registration fee to MERS pursuant to an agreement or understanding that the business of registering all subsequent sales of the note and mortgage should be referred to MERS.  Such kickbacks violate 12 U.S.C. § 2607(a).

(D.E. 184, ¶¶ 35, 36.)[22]  Thus, Plaintiffs allege that MERS members "kickback" the MERS registration fee to MERS, and also refer subsequent business to MERS.  (Id.)

For a thing of value to constitute a "kickback" under RESPA section 8(a), such thing of value must be given *in exchange for* the referral of business.  See S. Rep. 93-866, 93d Cong., 2d Sess. (1974), reprinted in 1974 U.S. C.C.A.N. 6551 ("[RESPA] is intended to prohibit all kickback and referral fee arrangements whereby any payment is made or 'thing of value' furnished *for* the referral of real estate settlement business.") (emphasis added); see also Krupa, *et al.* v. Landsafe, Inc., *et al.*, 514 F.3d 1153, *4-5 (11th Cir. 2008) ("RESPA's § 2607(a) is quite specific in describing the kickback that it proscribes.  It prohibits a kickback *for* referral of business.") (emphasis added); Spicer v. The Ryland Group, Inc., 523 F. Supp. 2d 1356, 1359 (N.D. Ga. 2007) ("12 U.S.C. § 2607 prohibits kickbacks and unearned fees *in exchange for* the referral of real estate settlement service business.") (emphasis added); McCulloch v. Great Westen Bank, No. C97-1422WD, 1998 U.S. Dist. LEXIS 8226, * 8 (W.D. Wash. Feb. 10, 1998) ("RESPA § 8(a) prohibits any 'agreement or understanding' for the 'referral' of settlement services *in exchange for* a 'thing of value.'") (emphasis added).  Here, Plaintiffs allege that MERS members give MERS *both* the alleged "kickback" *and* the referral of subsequent

---

[22]     When describing Plaintiffs' allegations, the Court will cite to the Knighton nationwide class action complaint.  (D.E. 184.)  The language in the other Plaintiffs' complaints is virtually identical to the language in the Knighton complaint.

business.   (D.E. 184, ¶¶ 35, 36.)   This simply cannot constitute an illegal kickback as contemplated by RESPA.

Plaintiffs, apparently realizing their error one year and nine months after filing their complaint in federal court,[23] propose an alternate "kickback" scenario in their motion for class certification and response to Defendants' motion to dismiss.   Notably, the deadline for amendment of pleadings passed on August 31, 2007.  (D.E. 14, ¶ 7(c).)  Perhaps because they are aware that the opportunity to amend their claims has expired, Plaintiffs attempt to disguise their new theory as the theory stated in their complaint, asserting in their motion for class certification and response to Defendants' motion to dismiss, respectively:

> In this case, Count I alleges that, in exchange for the MERS registration fee, Defendants provide lenders with the ability to avoid payment of government recording fees for transfers subsequent to the original loan by registering the lenders' mortgages in Defendants' registration system.   Complaint at ¶ 35.   It further alleges that the ability to avoid payment of government recording fees is consideration for an agreement or understanding between Defendants and lenders, and therefore is a thing of value within the meaning of 12 U.S.C. §§ 2602(2) and 2607(a).   Complaint at ¶¶ 35 and 36.   (D.E. 241 at 17-18.)

> In this case, Plaintiffs allege that in exchange for payment of the MERS registration fee, Defendants provide lenders with the ability to avoid payment of government recording fees for transfers subsequent to the original loan by registering the lender's mortgages in Defendants' registration system.   Plaintiffs further allege that the ability to avoid payment of government recording fees is consideration for an agreement or understanding between Defendants and lenders, and therefore is a thing of value within the meaning of 12 U.S.C. §§ 2602(2) and 2607(a).   Plaintiffs further allege that said agreement or understanding is that lenders will register other mortgages in Defendants' registration system … (D.E. 264 at 5-6.)

Because Plaintiffs' new theory was not advanced prior to the deadline for amendment of pleadings, it cannot save Plaintiffs' RESPA section 8(a) claim from dismissal.  Lest Plaintiffs be

---

[23]   The original complaint in <u>Knighton v. Merscorp Inc.</u>, 2:07-cv-0029, containing a RESPA section 8(a) claim identical to the claim asserted in the currently-operative complaint, was filed on April 13, 2006.  (D.E. (29) 1, ¶¶ 29, 30.)

tempted to re-file their complaint alleging this new theory, however, the Court will take this opportunity to explain why this theory lacks merit as well.

Plaintiffs' new theory alleges that MERS provides its members with a "thing of value," *i.e.*, the "avoidance of government recording fees," in exchange for the referral of subsequent business.  (D.E. 241 at 17-18; D.E. 264 at 5-6.)  The Court agrees that MERS does provide its members with a thing of value, namely the ability to track the beneficial and servicing rights associated with a mortgage without having to record every assignment of such rights in the public land records (which, as Plaintiffs correctly note, reduces the cost of public recording). This thing of value, however, is not provided in exchange for the referral of subsequent business. To the contrary, it is, as acknowledged by Plaintiffs in their complaint and motion for class certification, provided in exchange for the nominal MERS registration fee.  (D.E. 184, ¶ 35 ("This kickback [*i.e.*, the MERS registration fee,] is payment for the avoidance of government recording fees …"); D.E. 241 at 17 ("In this case, Count I alleges that, *in exchange for the MERS registration fee*, Defendants provide lenders with the ability to avoid payment of government recording fees for transfers subsequent to the original loan by registering the lenders' mortgages in Defendants' registrations system.") (emphasis added).)  This exchange falls squarely within RESPA's section 8 safe-harbor provision, *i.e.*, it is "compensation or other payment for … services actually performed …"  U.S.C. § 2607(c)(2).

Additionally, to allow Plaintiffs to characterize the service provided by MERS as a "kickback" would expose *all* providers of settlement services to RESPA section 8(a) liability. The legal services provided by the attorneys who draft mortgage agreements in exchange for payment from the mortgage borrowers certainly constitute "things of value."  That is precisely why the borrowers pay for them.  Do these services qualify as illegal kickbacks provided in

exchange for the referral of future business?  What about the services provided by the couriers who transfer the necessary mortgage documents, or the services provided by the companies that perform the requisite credit checks?  The provision of a service in exchange for payment cannot be labeled an "illegal kickback" merely because the service constitutes a "thing of value."

### C.    Unearned Fees.

RESPA Section 8(b) is a prohibition against unearned fees, which dictates that "[n]o person shall give and no person shall accept any portion, split, or percentage of any charge made or received … other than for services actually performed."  12 U.S.C. § 2607(b).  Plaintiffs argue in their complaint that:

> MERS members give, and MERS accepts, the … MERS registration fee charged to the borrower in connection with federally related mortgage loans.  This charge is made to and received from the borrower for services that do not benefit the borrower.
>
> The service actually performed for the borrower is payment of government recording fees.  The MERS registrations fee is a charge for a service other than payment of government recording fees.  The giving by MERS members and acceptance by MERS of the MERS registration fee violates 12 U.S.C. § 2607(b).

(D.E. 184, ¶¶ 41-42.)  Thus, Plaintiffs argue that the MERS registration fee violates section 8(b) because the services performed in exchange for the fee "do not benefit the borrower."  (Id.)

### i.    "Settlement Services."

To state a claim under Section 8(b) of RESPA, Plaintiffs must establish that the service provided by MERS constitutes a "settlement service" within the meaning of the statute.  See Wooten v. Quicken Loans, Inc., C.A. No. 07-00478-CG-C, 2008 U.S. Dist. LEXIS 20252, *12 (S.D. Ala. Mar. 10, 2008) ("Section 8(b) only applies to charges for the rendering of a real estate 'settlement service.'"); Thomas v. Ocwen Fed. Bank FSB, 01-C-4249, 2002 U.S. Dist. LEXIS

1231, *13 (N.D. Ill. Jan 23, 2002) ("[Section 8] of RESPA only applies to fee-splitting and referrals for settlement services and does not apply to charges … unrelated to settlement services"); <u>Bloom v. Martin</u>, 865 F. Supp. 1377, 1381 (N.D. Cal. 1994) (stating that RESPA Section 8 "appl[ies] only to settlement services").  As stated above, section 8(b) reads:

> No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of **a real estate settlement service** in connection with a transaction involving a federally related mortgage loan other than for services actually performed.

12 U.S.C. § 2607 (emphasis added).  Despite this clear mandate, Plaintiffs vigorously argue in their motion for class certification that the service provided by MERS is *not* a real estate settlement service.  (D.E. 241 at 15 ("[R]egistration in the MERS system is not a settlement service."), 16 ("[T]he MERS registration fee at issue in this case … is not a payment for a settlement service."), 18 n. 13 ("Plaintiffs do not allege that the registration for mortgage loans in the MERS system is itself a real estate settlement service within the meaning of RESPA.  Indeed, Plaintiffs submit that such business is not a real estate settlement service."), 20 ("Registration of a mortgage in Defendant's nongovernmental registration system is not a settlement service within the meaning of RESPA.  It is an investment tool.").)  Thus, if the Court were to accept Plaintiffs' own arguments, it would be clear that Plaintiffs have *not* stated a claim under RESPA section 8(b).

> RESPA defines "settlement services" to include:

> any service provided in connection with a real estate settlement including, but not limited to, the following: title searches, title examinations, the provision of title certificates, title insurance, services rendered by an attorney, the preparation of documents, property surveys, the rendering of credit reports or appraisals, pest and fungus inspections, services rendered by a real estate agent or broker, the origination of a federally related mortgage loan (including, but not limited to, the taking of loan applications, loan processing, and the underwriting and funding of loans), and the handling of the processing, and closing or settlement.

12 U.S.C. § 2602(3).   In addition, the Department of Housing and Urban Development ("HUD"), the body authorized by Congress to "prescribe such rules and regulations, to make such interpretations, and to grant such reasonable exemptions for classes of transactions, as may be necessary to achieve the purposes of RESPA," 12 U.S.C. § 2617(a), defines "settlement service" to include:

> [A]ny service provided in connection with a prospective or actual settlement[24], including, but not limited to, any one or more of the following:
>
> (1)   Origination of a federally related mortgage loan …;
> (2)   Rendering of services by a mortgage broker …;
> (3)   Provision of any services related to the origination, processing or funding of a federally related mortgage loan;
> (4)   Provision of title services …;
> (5)   Rendering of services by an attorney;
> (6)   Preparation of documents …;
> (7)   Rendering of credit reports and appraisals;
> (8)   Rendering of inspections …;
> (9)   Conducting of settlement by a settlement agency and any related services;
> (10)  Provision of services involving mortgage insurance;
> (11)  Provision of services involving hazard, flood, or other casualty insurance or homeowner's warranties;
> (12)  Provision of services involving mortgage life, disability, or similar insurance designed to pay a mortgage loan upon disability or death of a borrower, but only if such insurance is required by the lender as a condition of the loan;
> (13)  Provision of services involving real property taxes or any other assessments or charges on the real property;
> (14)  Rendering of services by a real estate agent or real estate broker; and
> (15)  Provision of any other services for which a settlement service provider requires a borrower or seller to pay.

24 C.F.R. § 3500.2.

The service provided by MERS does not fall squarely within any of the categories of "settlement services" described above.   It is, however, encompassed by HUD's "catch-all" provision, which defines all "services for which a settlement service provider requires a borrower

---

[24]   HUD defines "settlement" as "the process of executing legally biding documents regarding a lien on property that is subject to a federally related mortgage loan."  24 C.F.R. § 3500.2.

… to pay" as "settlement services."  While the Court is not convinced that the service provided by MERS is sufficiently "conntect[ed]" to the real estate settlement to qualify as a "settlement service" as contemplated by RESPA, <u>see</u> 12 U.S.C.  § 2602(3), even in light of HUD's liberal interpretation of the term, the Court need not make this determination for purposes of this order. The Court will assume that the service provided by MERS qualifies as a settlement service within the meaning of the statute, and dismiss Plaintiffs' section 8(b) claim on other grounds.

### ii.    "Any Portion, Split, or Percentage."

Plaintiffs' section 8(b) claim is somewhat unusual in that it attempts to qualify the entire, undivided MERS registration fee as a "portion, split, or percentage of a[] charge."  12 U.S.C. § 2607(b).  The majority of case law analyzing section 8(b) addresses situations in which a fee charged to a borrower is *split* between two parties, and at least one portion of divided fee is unearned. <u>See</u>, <u>e.g.</u>, <u>See</u> <u>Santiago v. GMAC Mortgage Group, Inc.</u>, *et al.*, 417 F.3d 384, 388-389 (3rd Cir. 2005) (holding that a defendant who "marks up" the cost of a third party settlement service and retains the "marked-up" portion of the charge violates section 8(b)); <u>Krzalic v. Republic Title Co.</u>, 314 F.3d 875, 879 (7th Cir. 2002) ("The statutory language describes a situation in which A charges B (the borrower) a fee of some sort, collects it, and then either splits it with C or gives C a portion of percentage … of it.").  The primary dispute among the Circuits, with respect to the application of section 8(b), is whether *both* parties splitting the fee must be culpable, or whether a *single* guilty party is enough.  <u>See</u> <u>Haug v. Bank of America</u>, 317 F.3d 832, 836 (8th Cir. 2003) ("Section 8(b) is an anti-kickback provision that unambiguously requires at least two parties to share a settlement fee in order to violate the statute."); <u>Boulware v. Crossland Mortgage Corp.</u>, 291 F.3d 261, 266 (4th Cir. 2002) ("The use of the conjunctive 'and' indicates that Congress was clearly aiming at an exchange or transaction, not a unilateral

act."); <u>Krzalic</u>, 314 F.3d at 879 (holding that section 8(b) did not apply where "[n]o one agreed to divide a receipt with [Defendant]"); <u>but</u> <u>see</u> <u>Santiago</u>, 417 F.3d at 388-389 (holding that section 8(b) prohibits "mark-ups" by a single culpable party); <u>Kruse, et al. v. Wells Fargo Home Mortgage, Inc., et al.</u>, 383 F.3d 49 (2nd Cir. 2004) (holding that section 8(b) prohibits "mark-ups" by a single culpable party); <u>Sosa, et al. v. Chase Manhattan Mortgage Corp.</u>, 348 F.3d 979, 983 (11th Cir. 2003) (holding that "a single party can violate subsection 8(b).").

The Second Circuit is the only Circuit that has analyzed whether section 8(b) applies to *undivided* fees, such as the MERS registration fee. <u>See</u> <u>Cohen v. J.P. Morgan Chase & Co., et al.</u>, 498 F.3d 111 (2nd Cir. 2007). In <u>Cohen</u>, Plaintiff alleged that Defendants violated RESPA section 8(b) by charging her a $225 "post-closing fee" for which they performed no services. <u>Id</u>. at 114. The district court dismissed her claim, in part, because she had "failed to plead that the challenged fee represented part of a charge split between [Defendants] and one or more third parties." <u>Id</u>. at 113. On appeal, the Second Circuit reversed. <u>Id</u>. at 126.

The Second Circuit characterized the issue on appeal as:

whether RESPA 8(b)'s reference to "any portion, split, or percentage of any charge" clearly and unambiguously indicates Congress's intent to prohibit unearned fees only when incorporated in charges divided among two or more persons, thereby precluding HUD's construction of the statute to prohibit "one service provider" from "charg[ing] the consumer a fee where no, nominal, or duplicative work is done."

<u>Id</u>. at 116 (quoting Statement of Policy 2001-1, 66 Fed. Reg. 53052, 53059 (Oct. 18, 2001) ("2001 SOP")). To resolve this issue, the Court interpreted section 8(b) in accordance with the two-step process outlined in <u>Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.</u>, 467 U.S. 837 (1984). <u>Cohen</u>, 498 F.3d at 116. After reviewing the statutory text, as well as RESPA's "structure, purpose, and history," the Court concluded that "the statutory text is ambiguous in conveying Congress's intent," and "neither the structure, purpose, nor legislative

history of RESPA § 8(b) clearly resolves the identified textual ambiguity with respect to undivided, unearned fees …" Id. at 120, 124.  The Court, thus, deferred to HUD's reasonable interpretation of section 8(b), which prohibits "one service provider [from] charg[ing] the consumer a fee where no, nominal, or duplicative work is done …"  2001 SOP, 66 Fed. Reg. at 53059.

In light of the divergent interpretations of RESPA section 8(b), this Court is inclined to agree with the Second Circuit that the statute is ambiguous.  The Court, however, need not decide this issue for purposes of this order because the Court has determined that Plaintiff's section 8(b) claim must be dismissed on other grounds.  The Court will, thus, proceed as though section 8(b) applies to undivided fees and will dismiss Plaintiff's section 8(b) claim for the reasons discussed below.

### iii.  "Services Actually Performed."

Despite the Court's conclusion that section 8(b)'s "portion, split, or percentage" language applies to undivided charges, Plaintiffs' section 8(b) claim must be dismissed because Plaintiffs have not alleged that the MERS registration fee is "made or received … other than for services actually performed."  12 U.S.C. § 2607(b).  Plaintiffs do not allege in their Complaint that MERS provided *no* service in exchange for the MERS registrations fee; rather, Plaintiffs allege that the service performed by MERS did not benefit the borrower and, thus, was "unearned." (D.E. 184, ¶¶ 41-42.)  Because the plain language of section 8(b) does not require a benefit to the borrower, Plaintiffs' section 8(b) claim must be dismissed.

The question of whether a real estate settlement service must directly benefit the borrower to comport with section 8(b), as argued by Plaintiffs, has not been explicitly addressed by any Circuit Court.  The plain language of the statute, however, includes no such requirement,

stating merely that the "real estate settlement service" must be "actually performed."  12 U.S.C. § 2607(b).  "In conducting statutory interpretation, we begin our inquiry with the plain language of the statute."  <u>United States v. Morales-Palacios</u>, 369 F.3d 442, 446 (5th Cir. 2004) (citing <u>Staples v. United States</u>, 511 U.S. 600, 605 (1994)).  "'When the [statute's] language … is plain we must abide by it; we may depart from its meaning only to avoid a result so bizarre that Congress could not have intended it.'"  <u>Moore v. Cain</u>, 298 F.3d 361, 366 (5th Cir. 2002) (quoting <u>Withrow v. Roell</u>, 288 F.3d 199, 203 (5th Cir. 2002) (internal citation and quotation marks omitted)).

The Court cannot say that the plain language of the statute is "'so bizarre that Congress could not have intended it.'"  <u>Id</u>.  It is feasible, even probable, that Congress, through section 8(b), intended to prohibit only unearned fees, not fees for services that were actually performed for parties to the loan transaction other than the borrower, *e.g.*, the lender or the seller.  The crux of Plaintiffs' argument appears to be that services actually performed for the borrower should be paid for by the borrower, and services actually performed for other parties to the loan transaction should *not* be paid for by the borrower.  While this position has rational appeal, it is not at all clear that section 8(b) is the appropriate vehicle through which it should be enforced.  Section 8(b) does not dictate which party to the loan transaction must pay for which settlement services; rather, it prohibits payments for services that were not actually performed.  It is clear in this case that the MERS registration fee is a payment for a service that *was* actually performed.

**V.      Conclusion.**

For the reasons discussed above, Defendants' Motion to Dismiss is hereby GRANTED.

Because Plaintiffs have no remaining claims, Plaintiffs' Motion for Class Certification is hereby

DENIED as MOOT.

SIGNED and ORDERED this 16th day of May, 2008.

Janis Graham Jack
United States District Judge